UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GAWAYNE WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH M. LAMUSTA, <br> ROBERT L. MCCARTHY, <br> and ALYSSA B. THIBAULT, <br><br> Defendants. | Case No. 20-CV-10973-AK |

## MEMORANDUM AND ORDER ON
## DEFENDANT ALYSSA THIBAULT'S MOTION TO DISMISS

**A. KELLEY, D.J.**

This case originates from an amended complaint filed by Gawayne Williams ("Plaintiff" or "Mr. Williams") [Dkt. 66, "Am. Cmplt."][1] against Massachusetts ADA Alyssa Thibault ("Defendant" or "ADA Thibault"), alleging she violated Mr. Williams' rights while acting as the prosecutor at his trial on OUI and related charges. ADA Thibault moves to dismiss this action for lack of subject matter jurisdiction and failure to state a claim, alleging the plaintiff's allegations are barred by her absolute prosecutorial immunity and the Commonwealth of Massachusetts's sovereign immunity. [Dkt. 71]. For the reasons described below, the defendant's motion will be **GRANTED,** and the claims against ADA Thibault **DISMISSED**.

---

[1] This is Mr. Williams's third amended complaint, and he adds two new defendants: ADA Thibault, the prosecutor who represented the Commonwealth at Mr. Williams's trial; and Massachusetts State Trooper Robert McCarthy, a law enforcement witness who testified at trial. This motion to dismiss solely relates to the claims against ADA Thibault.

1

I.  FACTUAL & PROCEDURAL BACKGROUND

On May 22, 2017, Mr. Williams was arrested by Joseph M. Lamusta ("Trooper Lamusta"), a Massachusetts state trooper, while at a gas station in Lynn [Am. Cmplt. ¶¶ 21–22]. While being arrested and booked, Mr. Williams alleges that Trooper Lamusta violated his constitutional and civil rights and Massachusetts common law [Id. ¶¶ 70–131]. From this incident, Mr. Williams was prosecuted, and a jury convicted him of operating under the influence of intoxicating liquor, negligent operation of a motor vehicle, disorderly conduct, resisting arrest, and witness intimidation [Dkt. 72-1 at 8]. Mr. Williams alleges that ADA Thibault, the prosecutor who tried his case, "manufactured," and misrepresented evidence, improperly acted as a "witness," and presented him to the jury in an unsavory manner. [Am. Cmplt. ¶¶ 52–54, 100, 111, 105]. Mr. Williams also alleges that ADA Thibault pressured one of his witnesses not to testify by threatening to bring an interference charge against that witness. [Id. ¶ 55]. Finally, Mr. Williams alleges that ADA Thibault wrongfully used Trooper Robert McCarthy ("McCarthy") as a witness at trial, as he was not present at the time of the arrest or at Mr. Williams's booking into custody. [Id. ¶¶ 56, 100, 113–14, 127]. Through these actions, Mr. Williams claims ADA Thibault intentionally inflicted severe emotional distress on him [Id. a¶¶ 119, 125–27].

Mr. Williams brings several claims against ADA Thibault including malicious prosecution, a violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, civil conspiracy under 42 U.S.C. § 1983 and 18 U.S.C. §§ 241 and 242, intentional infliction of emotional distress, and abuse of process. On July 6, 2022, ADA Thibault filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, arguing that she is

protected by state sovereign immunity and absolute prosecutorial immunity [Dkt. 71]. In response, Mr. Williams filed an opposition [Dkt. 73], which argues that ADA Thibault is not entitled to this protection and is liable for damages. Because sovereign and absolute immunity grant prosecutors wide protection under federal civil rights law and the Massachusetts Torts Claim Act ("MTCA"), the claims against ADA Thibault are dismissed.

## II. DISCUSSION

### a. Pleading Standard

As always, the question of the Court's jurisdiction takes precedence. The party asserting federal jurisdiction is responsible for establishing that such jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress," Esquilín–Mendoza v. Don King Productions, Inc., 638 F.3d 1, 3 (1st Cir. 2011); see also CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) (describing federal courts' "responsibility to police the border of federal jurisdiction" (citation omitted)).

When a party has moved for dismissal based on lack of subject matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Kersey v. Prudential Ins. Agency, LLC, No. 15-CV-14186-GAO, 2017 WL 5162006, at *6 (D. Mass. Feb. 3, 2017) (quoting Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (quotations and citations omitted)). Moreover, "it is black-letter law that jurisdiction must be

3

apparent from the face of the plaintiffs' pleading." Id. (quoting PCS 2000 LP v. Romulus Telcomms., Inc., 148 F.3d 32, 35 (1st Cir. 1998)).

### b. Section 1983 Claims

Facially, 42 U.S.C. § 1983 imposes liability on anyone who violates the Constitution and laws of the United States: "[e]very person who, under color of any statute" who subjects any citizen of the United States to be deprived "of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." Despite the absolute language of 42 U.S.C. 1983, immunity doctrines limit the statute's application to government officials and employees.

The Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const, amd. XI. However, although commonly referred to as "Eleventh Amendment immunity," immunity from suit is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." Alden v. Maine, 527 U.S. 706, 713 (1999). In Will v. Michigan Department of State Police, the Supreme Court explained how sovereign immunity limits the scope of Section 1983 claims, holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71 (1989). State sovereign immunity shields from suit any governmental body which is an "arm of the state," including district attorney's offices and their prosecutors. Wojcik v. Massachusetts State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002); Miller v. City of Boston, 297 F. Supp. 2d 361, 368 (D. Mass. 2003). This doctrine exempts state defendants from the "general federal power to

authorize private suits", as exposure to suit would restrict state governments' sovereignty to rule according to the will of their constituents. See Alden, 527 U.S. at 750–51.

When state officials, rather than state governments themselves, are sued, the law distinguishes between suits brought against these persons in their *official* capacities as government employees and in their *personal* capacities as private citizens. Hafer v. Melo, 502 U.S. 21, 25. State officials sued in their personal capacities are "persons" within the meaning of § 1983 who are liable to suit, but "official capacity" defendants assume the identity of the government that employs them and are entitled to sovereign immunity. Id. Personal capacity suits "seek to impose individual liability upon a government officer for actions taken under color of law," which fall outside the scope of their official governmental duties. Id. To determine whether a suit is being brought against a defendant in personal or official capacity, courts look to the "course of proceedings." See Asociación de Subscipción Conjunta del Seguro de Responsibilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 23 n.25, 25–26 (1st Cir. 2007).

In this case, Mr. Williams' complaint does not identify whether he is bringing a claim against ADA Thibault in her official or individual capacity. [Am. Cmplt. ¶¶ 52–56]. The "course of proceedings" as presented in Mr. Williams' complaint, see Flores Galarza, 484 F.3d at 25–26, however, seems to only implicate the official governmental actions ADA Thibault took while prosecuting Mr. Williams. [Am. Cmplt. ¶¶ 52–56]. Specifically, Mr. Williams is alleging that ADA Thibault fabricated evidence, attempted to pressure Mr. Williams's witness not to testify, and wrongfully presented government witnesses. [Id. ¶¶ 52-56]. These allegations all relate to events which occurred in preparation for trial or during trial itself, and thus fall within the realm of ADA Thibeault's official prosecutorial duties. Therefore, because ADA Thibault was operating within her official role at the time of her alleged misconduct, the Court can infer that

Mr. Williams is suing her in her official capacity. And because ADA Thibault was acting as an "arm" of the state, she cannot be sued as a "person" under § 1983. Wojcik, 300 F.3d at 99.

If Mr. Williams were, for the sake of argument, suing ADA Thibault in her individual capacity, he would be barred by the related doctrine of absolute prosecutorial immunity. The Supreme Court has held that individuals performing prosecutorial functions have absolute immunity from suit in their personal capacities. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Courts recognize absolute immunity attaches to certain government officials "because [ ] the special nature of their responsibilities require[s] a full exemption from liability." Nixon v. Fitzgerald, 457 U.S. 731, 747 (1982). Specifically, prosecutors are entitled to absolute immunity because a "prosecutor's office would suffer if [she] were constrained in making every decision by the consequences of the terms of [her] *own potential liability*." Imbler, 424 U.S. at 425 (emphasis added). Because prosecutors possess discretion in deciding which cases to bring, the potential that they may be sued in their individual capacity could infringe on this essential discretion. Id. ("A prosecutor is duty bound to exercise [his or her] best judgement both in deciding which suits to bring and in conducting them in court."). Thus, absolute immunity is essential to the judicial system's policy of empowering prosecutors to pursue justice for each individual defendant through informed decision-making.

To determine whether a prosecutor's actions are shielded by absolute immunity, courts examine whether the prosecutor's "activities were intimately associated with the judicial phase of the criminal process." Id. For example, a prosecutor has absolute immunity in preparing a case for judicial proceedings and presenting evidence. Afrasiabi v. Massachusetts, 272 F. Supp. 3d 256, 261–62 (D. Mass. 2017). By contrast, a prosecutor is not entitled to absolute immunity for actions taken outside his or her prosecutorial function, such as speaking to the media,

6

advising police officers during investigation, or acting as a witness. Id. at 262; see Van de Kamp v. Goldstein, 555 U.S. 335, 342–43 (2009).

Here, each of the claims that Mr. Williams brings against ADA Thibault relates to her conduct during pre-trial proceedings and the presentation of evidence at the plaintiff's trial. Because none of ADA Thibeault's actions that Mr. Williams points to fall outside of the "judicial phase of the criminal process," see Imbler, 424 U.S. at 425, all of these claims are precluded by absolute immunity. Mr. Williams attempts to analogize his claims to those raised in Buckley v. Fitzsimmons, a case in which the Supreme Court held that absolute immunity did not attach to a prosecutor who conducted investigatory work for an unsolved crime. 509 U.S. 259, 275 (1993). The present case is different, as Mr. Williams's claims do not concern a prosecutor's detective work, but her conduct before and during actual trial proceedings, which is thus "intimately associated with the judicial phase of the criminal process." See id. at 269–70.

Mr. Williams also argues that ADA Thibault is not entitled to immunity because of her "abusive conduct." [Dkt. 73 at 8]. However, "absolute immunity endures even if the official 'acted maliciously and corruptly' in exercising [her] judicial or prosecutorial functions." Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013) (citation omitted), and applies even "in the presence of 'grave procedural errors'" so long as the alleged conduct falls within the prosecutorial function, Nystedt v. Nigro, 700 F.3d 25, 32 (1st Cir. 2012) (quoting Stump v. Sparkman, 435 U.S. 349, 359 (1978)). Accordingly, Mr. Williams's bare claim of "abusive conduct" is insufficient to pierce the veil of absolute immunity, as even if he had alleged that ADA Thibault committed gross abuse while prosecuting his case, immunity would still apply. See Ricci v. Key Bancshares of Maine, Inc., 768 F.3d 456, 462 (1st Cir. 1985) ("Although the concept of absolute immunity allows some abuses of official power to go unredressed, it is

7

necessary for the effective administration of government that government workers be able to perform their jobs without fear of liability"). Accordingly, ADA Thibault is shielded from all of Mr. Williams's civil rights claims related to 42 U.S.C. § 1983.[2]

### c. Massachusetts Tort Claims Act (MTCA) Claims

In addition to his federal claims, Mr. Williams also brings several state claims against ADA Thibault pursuant to the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. L. ch. 258. Specifically, Mr. Williams alleges ADA Thibault committed the intentional torts of malicious prosecution, intentional infliction of emotional distress, and abuse of process. Because the MTCA establishes that ADA Thibault is immune from such intentional tort causes of action,[3] these claims will be dismissed.

The MTCA outlines the liability and indemnity procedures for suits against Massachusetts local and county governments and their employees. "Within a narrow statutory framework," the MTCA waives sovereign immunity for some tort claims, while providing wide immunity for several classes of individuals. Sharon v. City of Newton, 769 N.E.2d 738, 111 (Mass. 2022); M.G. L. ch. 258, § 10. For instance, any employee exercising discretionary decision-making, within the scope of their office, is immune from related liability suits. Id. § 10(b). A public employee is further immune from suit under the MTCA if their decision is discretionary and involves policymaking or planning. Harry Stoller & Co., Inc. v. City of Lowell, 587 N.E. 2d 780, 782–83 (Mass. 1992). The immunity for governmental policymaking

---

[2] Mr. Williams also brings claims pursuant to 18 U.S.C. §§ 241 and 242 against ADA Thibault. These statutes create criminal charges, not civil causes of action, and Mr. Williams thus cannot pursue these claims against ADA Thibault. Each of these claims is likewise **DISMISSED**. See [Dkt. 71 at 16].

[3] Mass. Gen. L. ch. 258 § 10(c) bars: "any claim arising out of an intentional tort including assault, battery, false imprisonment, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations."

or planning is implicated where "the imposition of liability might jeopardize the quality of the governmental process" or if the claim cannot be adjudicated without "usurping the power…of either the legislative or executive branch of government." Id. at 783.  Further, the MTCA does not allow suit against any public employee for "wrongful acts or omissions while performing within the scope of their office or employment." M.G.L. ch. 258, § 2.  The MTCA likewise does not waive sovereign immunity in cases alleging intentional torts such as assault, battery, and false imprisonment.  Id. § 10(c).

      Mr. Williams's tort claims against ADA Thibault are barred by the terms of the MTCA.  First, Mr. Williams solely alleges intentional tort claims of malicious prosecution, abuse of process, and intentional infliction of emotional distress barred by the statute.  See [Am. Cmplt. ¶¶ 52–56]; M.G.L. ch. 258, § 10(c); Figueroa v. Town of Southbridge, 27 Mass. L. Rptr. 49, 2010 WL 1795600 at *2 (March 22, 2010) (concluding that abuse of process is an intentional tort barred by MTCA); Luthy v. Proulx, 464 F.Supp. 2d 69, 76 (D. Mass. 2006) (stating that the MTCA bars suits for intentional torts including abuse of process, malicious prosecution, and intentional infliction of emotional distress); Doe v. Town of Plymouth, 825 F.Supp. 1102, 1112 (D. Mass. 1993) (intentional infliction of emotional distress falls within the MTCA exclusion for intentional misconduct).

      Additionally, the claims are barred because ADA Thibault was exercising a discretionary function as a public prosecutor at the time she allegedly took each of the actions cited in the complaint.  M.G.L. ch. 258, § 10(c); see also Jones v. Office of Suffolk Cty. Dist. Atty., 82 Mass. App. Ct. 1101 (Table), 2012 WL 2159258, at *1 (Jun. 15, 2012) (finding that tort claims against prosecutors are barred under MTCA § 10(b)).  Again, this bar applies in order to grant prosecutors wide discretion in deciding whether to bring an individual to trial based upon the

merits of their case.  See Manning v. Municipal Court of Roxbury Dist., 361 N.E.2d 1274, 1276 (Mass. 1977). ("the prosecution of any complaint… is conducted in the interests of the Commonwealth").  If ADA Thibault were made to stand trial over these discretionary decisions, it could chill the independence of prosecutors in deciding to bring cases to trial and constitute an improper overreach by the Court on the functions of the executive branch.  See S.G. v. Belmont Police, 97 Mass. App. Ct. 1108 (Table), 2020 WL 1526429, at *1 (Mar. 31, 2020) (Judicial interference with prosecutorial discretion "would constitute an intolerable interference by the judiciary in the executive department of the government").[4]

**CONCLUSION**

For the reasons above, ADA Thibault's motion to dismiss will be GRANTED. All claims against ADA Thibault are **DISMISSED** with prejudice.


**SO ORDERED.**

December 8, 2022                                                                                   /s/ Angel Kelley
                                                                                                           ANGEL KELLEY
                                                                                                           U.S. DISTRICT JUDGE

---

[4] In ADA Thibault's memorandum in support of her motion to dismiss [Dkt. 72], she argues that even if § 10(b) does not apply, the plaintiff's acts are barred by § 10(a), which states "any claim based upon an act or omission of a public employee when such employee is exercising due care in the execution of any statute or any regulation of a public employer, or any municipal ordinance or by-law, whether or not such statute, regulation, ordinance or by-law is valid." [Id. at 12, n.7].  Here, ADA Thibault is acting within her official prosecutorial capacity within the law and is therefore covered by this exception as well.