UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GAWAYNE WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH M. LAMUSTA and<br>ROBERT L. MCCARTHY<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 20-CV-10973-AK |

**MEMORANDUM AND ORDER ON PLAINTIFF GAWAYNE WILLIAMS'
MOTION TO STAY PROCEEDING UNTIL UNDERLYING MOTION TO VACATE IS
HEARD IN LOWER COURT**

**ANGEL KELLEY, D.J.**

This civil rights action[1] arises from Plaintiff Gawayne O. Williams' ("Plaintiff" or "Williams") allegations that Defendants Robert L. McCarthy ("McCarthy") and Joseph M. Lamusta ("Lamusta") (collectively, the "Defendants"), both Massachusetts State Troopers, violated his constitutional and civil rights, engaged in malicious prosecution through an abuse of process, and intentionally inflicted emotional distress upon him. [Dkt. 66]. Currently pending before this Court is Williams' Motion to Stay Proceeding Until Underlying Motion to Vacate is Heard in the Lower Court [Dkt. 138], which the Defendants oppose. [Dkt. 144]. For the reasons outlined below, Williams' Motion to Stay is **GRANTED**, and these proceedings are **STAYED**.

---

[1] This is Williams' third amended complaint ("Am. Cmplt.") wherein he added two defendants, including Assistant District Attorney Alyssa B. Thibault (ADA Thibault), the state prosecutor who represented the Commonwealth at Williams' trial. All claims against ADA Thibault were previously dismissed in this action [Dkt. 89], so this Motion to Stay in the alternative solely relates to the claims against the remaining defendants.

1

I.   **FACTUAL & PROCEDURAL BACKGROUND**

On May 22, 2017, Lamusta arrested Williams at a gas station in Lynn, Massachusetts. [Am. Cmplt. ¶¶ 21-25]. Williams alleges that Lamusta and McCarthy violated his constitutional and civil rights, as well as Massachusetts common law, because of his arrest, booking, and prosecution. [Id. ¶¶ 70-131]. Following this incident, Williams was prosecuted in Lynn District Court and convicted by a jury of operating under the influence of intoxicating liquor, negligent operation of a motor vehicle, disorderly conduct, resisting arrest, and witness intimidation. [Dkt. 134-14 at 10-11]. Williams appealed, contending that there was insufficient evidence to support some charges and that a misstatement in the prosecutor's closing argument created a substantial risk of a miscarriage of justice. See Commonwealth v. Williams, 100 Mass. App. Ct. 1126, 184 N.E.3d 802, review denied, 490 Mass. 1102, 192 N.E.3d 257 (2022). The state appeals court affirmed his convictions, concluding that sufficient evidence supported the charges and that the prosecutor's arguments fell within permissible bounds of advocacy. Id.

On May 20, 2020, Williams filed the instant lawsuit in federal court. [Dkt. 1]. In his Amended Complaint, he asserts multiple claims against McCarthy, Lamusta, and ADA Thibault, including violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments under 42 U.S.C. § 1983 (Counts I and II), violations of state constitutional rights (Count III), malicious prosecution (Count IV), violations of equal protection and due process rights under the Fourteenth Amendment (Count V), civil rights conspiracy under 42 U.S.C. § 1983 and 18 U.S.C. §§ 241 and 242 (Count VI), intentional infliction of emotional distress (Count VII), and abuse of process (Count VIII). [Dkt. 66]. On June 6, 2022, ADA Thibault filed a Motion to Dismiss for lack of jurisdiction and for failure to state a claim based on the protections of

sovereign immunity and absolute prosecutorial immunity [Dkts. 71, 72], which this Court granted on December 8, 2022. [Dkt. 89]. Williams filed a Motion for Clarification regarding ADA Thibault's dismissal [Dkt. 90], which the Court construed as a motion for reconsideration and denied it. [Dkt. 92]. Williams appealed this decision [Dkt. 94] which the First Circuit dismissed for lack of jurisdiction on March 24, 2023 because this matter has not yet been fully resolved. [Dkt. 101].

On December 8, 2022, acting *pro se*, Williams filed a Motion for New Trial in Lynn District Court. See Commonwealth v. Gawayne Williams, Lynn District Court (1713-CR-001861). He also sought assistance from the Committee for Public Counsel Services (CPCS), [Dkt. 146-1], which provides legal representation to indigent clients in criminal and civil matters. COMMITTEE FOR PUBLIC COUNSEL SERVICES, https://www.publiccounsel.net/public/ (last visited September 20, 2024). CPCS's Post-Conviction Relief Unit specializes in reviewing closed cases to identify legal errors or new evidence that may warrant overturning a conviction, and in filing new trial motions when valid grounds exist. COMMITTEE FOR PUBLIC COUNSEL SERVICES, https://www.publiccounsel.net/pc/criminal-post-conviction-and-appeals-unit/ (last visited September 20, 2024). On November 2, 2023, CPCS notified Williams that they had completed a preliminary review of his case and were assigning it to an experienced member of their Post-Conviction Screening Panel. [Dkt. 146-1]. They also advised him against filing any *pro se* motions with the court without prior consultation and instructed him to request that the court take no action on any already filed motions while his case was being screened. Id. Williams filed a Motion/Request to Take No Action on the Motion For a New Trial with the Lynn District Court on February 6, 2024. See Williams, 1713-CR-001861. To date, there has been no adjudication on his Motion for a New Trial. Id.

On January 26, 2024, the Defendants separately filed Motions for Summary Judgment seeking dismissal of all claims against them in this action. [Dkts. 130, 133]. Williams opposed each on February 16, 2024 and further requested a stay of this action pending CPCS's review of his post-conviction materials. [Dkts. 138, 139]. The Defendants oppose the stay. [Dkt. 144]. On March 18, 2024, Williams filed a Notice in this action to inform this Court of the pending state court proceedings. [Dkt. 146].

## II.     LEGAL STANDARD

Federal courts possess the inherent authority to stay an action when a related proceeding is pending in another jurisdiction, but this inherent power must be balanced against the federal courts' obligation to exercise the jurisdiction conferred upon them by Congress. See Goldhammer v. Dunkin' Donuts, Inc., 59 F. Supp.2d 248, 251 (D. Mass. 1999); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15 (1983) (federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them"); KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003) (there is a "heavy presumption favoring the exercise of jurisdiction"). Abstention from federal jurisdiction is considered the exception rather than the rule. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 818 (1976) (a federal court may abstain from hearing a case involving parallel state-court litigation only in "exceptional circumstances").

This duty is not, however, absolute. See Can. Malting Co. v. Paterson S.S., Ltd., 285 U.S. 413, 422 (1932) ("[T]he proposition that a court having jurisdiction must exercise it, is not universally true"). Indeed, the Supreme Court has held that federal courts may decline to exercise their jurisdiction, in otherwise "exceptional circumstances," where denying a federal forum would clearly serve an important countervailing interest, Colo. River, 424 U.S. at 813

4

(quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189 (1959)).  For example, where abstention is warranted by considerations of "proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration," Colo. River, 424 U.S. at 817 (internal quotation marks omitted).

### III. DISCUSSION

Federal courts recognize several abstention doctrines: Pullman, Burford, Colorado River, and Younger.  Each doctrine aims to balance the jurisdictional boundaries between federal and state courts, ensuring respect for state court processes while promoting judicial efficiency.  Colo. River, 424 U.S. at 817.  Since Williams does not invoke any specific abstention doctrine in this action, the Court will address each in turn.

#### A. *Pullman* Doctrine

The Pullman abstention doctrine, named after Railroad Comm'n v. Pullman Co., applies when a federal court is asked to rule on the constitutionality of an unclear state law.  312 U.S. 496 (1941); see Barr v. Galvin, 626 F.3d 99, 107-08 (1st Cir. 2010); Zwickler v. Koota, 389 U.S. 241, 251 (1967) (noting that Pullman abstention is appropriate when a state statute, never interpreted by a state court, is "fairly subject to an interpretation which will avoid or modify the federal constitutional question").  This is because figuring out the state law first could make it unnecessary to deal with the federal constitutional question (if the state court can clarify the law, it might solve the problem without needing to address the federal issue).  The aim of the Pullman doctrine is to prevent federal-court error in deciding state-law questions.  See Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997).  Federal courts acknowledge that requiring a plaintiff to navigate state court first may undermine the very constitutional rights they seek to protect.  See Pineiro v. Gemme, No. CIVA. 10-40262-FDS, 2011 WL 4853019, at *5 (D.

5

Mass. Oct. 12, 2011) (quoting Zwickler, 389 U.S. at 252). Consequently, a federal court cannot invoke Pullman abstention just to let state courts handle federal rights first. See Pineiro, 2011 WL 4853019, at *5. If the state law cannot be interpreted in a way that avoids the federal issue, the federal court must exercise its jurisdiction. See Harman v. Forssenius, 380 U.S. 528, 534-535.

In this case, Pullman abstention is not applicable. Williams does not point to any state law that is ambiguous or unconstitutional. His claims focus on the violation of his rights rather than on unclear state laws. Additionally, his motion for a new trial and attempts to overturn his criminal conviction do not present complex or unresolved issues of state substantive law. Consequently, this Court declines to exercise abstention under the Pullman doctrine.

### B. Burford Doctrine

The Burford abstention doctrine, established in Burford v. Sun Oil Co., permits federal courts to abstain from cases that would interfere with complex and significant matters best resolved by state administrative agencies. 319 U.S. 315 (1943); see Perfect Puppy, Inc. v. City of E. Providence, R.I., 807 F.3d 415, 422 n. 8 (1st Cir. 2015) (advising federal courts not to interfere with state administrative proceedings when "timely and adequate state-court review is available."). The primary concern of Burford abstention is to avoid creating a parallel federal review process that could complicate or undermine state regulatory frameworks.

For instance, in the original Burford case, the plaintiff sought federal court approval for a state oil permit, a decision typically within the purview of the Texas Railroad Commission's purview, which regulated oil extraction to stabilize interstate oil prices. See Burford, 319 U.S. at 316-30. The Supreme Court abstained to maintain the integrity of Texas' regulatory scheme, recognizing it as an issue of significant local concern. Id. In similar cases, federal courts have

employed Burford abstention to avoid interfering with state regulatory decisions that are critical to state interests.  See, e.g., Ala. Pub. Serv. Comm'n v. S. Ry. Co., 341 U.S. 341 (1951); Allstate Insurance Co. v. Sabbagh, 603 F.2d 228 (1st Cir.1979); GE Buildtech Corp v. KGCI, Inc., No. 13-CV-10761-IT, 2015 WL 751110, at *5 (D. Mass. Feb. 23, 2015).  The Supreme Court later clarified that Burford allows for abstention when a case involves complex state law issues of broad importance, where federal court involvement would disrupt state efforts to establish a coherent policy on significant public matters.  See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 726-27 (1996) (discussing Burford and quoting Colorado River).

In applying the Burford doctrine, this Court interprets it narrowly, especially in cases not directly engaging state regulatory frameworks.  This case is distinct from those warranting Burford abstention.  Williams' claims focus on alleged constitutional violations, not fact-specific regulatory decisions, and do not involve complex state regulatory issues.  No state administrative scheme would be disrupted by this Court's jurisdiction.  Therefore, Burford-type abstention is not appropriate here, as it neither involves complex state regulatory matters nor risks undermining the Commonwealth's adjudication of post-conviction relief issues.

### C. *Colorado River* Doctrine

The Colorado River abstention doctrine, articulated in Colorado River Water Conservation District v. United States, seeks to prevent duplicative lawsuits in federal and state courts.  424 U.S. 800 (1976).  Courts must apply this doctrine with caution, reserving abstention for only the clearest cases where a stay or dismissal is warranted.  See Jimenez v. Rodriguez–Pagan, 597 F.3d 18, 27 (1st Cir. 2010) (citing Colo. River, 424 U.S. at 819).  To determine whether "exceptional circumstances" exist to justify abstention, courts consider eight factors:  (1) whether either court has control over a specific property (res); (2) the geographical

inconvenience of the federal court; (3) the need to avoid piecemeal litigation; (4) the order in which the courts took jurisdiction; (5) whether state or federal law applies; (6) whether the state court can adequately protect the parties' interests; (7) whether the federal claim is vexatious or contrived; and (8) respect for the principles behind removal jurisdiction.  Jiménez, 597 F.3d at 27-28 (quoting Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005)).

As a threshold matter, it is important to note that for abstention under Colorado River to be considered, the state action must resolve all claims presented in the federal case.  DraftKings Inc. v. Hermalyn, No. 1:24-CV-10299-JEK, 2024 WL 1886091, at *26 (D. Mass. Apr. 30, 2024) (quoting Glassie v. Doucette, 55 F.4th 58, 64 (1st Cir. 2022)); see also Moses, 460 U.S. at 28 ("When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties.  If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all . . . .  Thus, the decision to invoke Colorado River necessarily contemplates that the federal court *will have nothing further to do in resolving any substantive part of the case*, whether it stays or dismisses.") (emphasis added).  This is not the case here.  Williams' federal action involves civil claims seeking monetary damages, whereas the state court action is focused solely on invalidating his criminal conviction.  Notably, Williams does not argue that the state court proceedings will resolve the federal claims at issue.  Therefore, since the state court action cannot adequately address all the claims presented in this Court, the Colorado River doctrine is inapplicable.

While the Court need not "consider the additional factors drawn from Colorado River and its progeny" since abstention is not warranted, Glassie, 55 F.4th at 65 n. 4, it will do so for

completeness and finds that Williams has not demonstrated exceptional circumstances justifying abstention.

First, there is no specific property at issue in this case, rendering this factor neutral. Second, both the state and federal cases are situated in Massachusetts, and Williams has not demonstrated that the federal court is more convenient for him than the state court. Thus, this factor is also neutral.

Third, concerns about piecemeal litigation extend beyond mere "repetitive adjudication" and focus on the practical implications of litigating the same issues in separate forums. See Jiménez, 597 F.3d at 29. Here, although both actions arise from the same factual circumstances, there is no assertion that they will lead to redundant efforts. The desire to avoid piecemeal litigation therefore does not strongly support abstention in this instance.

Fourth, Williams filed this federal action in May 2020 [Dkt. 1], more than two years before he moved for a new trial in the state court in September 2022. Williams, 1713-CR-001861. Given that motions for summary judgment are pending in this federal case and ripe for adjudication [Dkts. 130, 133], the order in which the courts obtained jurisdiction weighs against abstention. See Colo. River, 424 U.S. at 820; Jiménez, 597 F.3d at 31.

Fifth, The presence of federal law issues is a significant factor weighing against abstention. Leiva v. DeMoura, Civil Action No. 20-11367-PBS, 2021 WL 1858366, at *3 (D. Mass. May 10, 2021) (quoting Moses, 460 U.S. at 26). In comparison, the presence of state law issues "weighs in favor of surrender only in 'rare circumstances' . . . when a case presents complex questions of state law that would best be resolved by a state court." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir. 1990). Here, federal law claims aside, the state law claims do not involve novel, unusual, difficult, or complex questions of state law.

Therefore, there are no rare circumstances warranting deference to the state court and this factor weighs against abstention.

Sixth, the circumstances do not provide any explicit reason to question the adequacy of the state forum. This factor is therefore neutral.

Seventh, the inquiry into "the vexatious or reactive nature of either the federal or the state litigation" is also relevant. Ezike v. Bliss, Civil Action No. 16-11832-DJC, 2017 WL 1826495, at *5 (D. Mass. May 5, 2017) (quoting Villa Marina, 915 F.2d at 15). In assessing this factor, district courts "look beyond the federal action and consider the circumstances giving rise to the filing of the state suit." Mass. Biologic Labs v. Medimmune, LLC, 871 F. Supp. 2d 29, 38 (D. Mass. 2012) (quoting Moses, 460 U.S. at 17 n.20). Reactiveness occurs when "one party files a federal action in reaction to an adverse ruling in state court," whereas "vexatiousness ordinarily refers to a situation where one party files a federal action merely to cause a delay or to force the other side to incur the additional costs associated with litigating the same issue in two separate courts." Ezike, 2017 WL 1826495, at *5 (internal citations and quotations omitted). In this instance, Williams' filings and statements suggest that this federal action was initiated as a collateral attack on his state criminal conviction, which is impermissible under Heck v. Humphrey, 512 U.S. 477 (1994). Indeed, even upon receiving this Court's December 8, 2022 denial of his motion to reconsider ADA Thibault's dismissal, Williams filed the Motion for a New Trial in state court. Such facts raise reasonable inferences that Williams is in search of a more favorable forum with potentially more advantageous rulings. While there is no clear indication of a vexatious motive, the circumstances imply a reactive nature to the filing of this action. Consequently, the seventh factor favors abstention.

Finally, since Williams did not remove the state court action to federal court, there is no need to consider the principles underlying removal jurisdiction. This last factor is therefore neutral. See Jli Invest S.A. v. Computershare Trust Co., No. 15-cv-11474-ADB, 2016 WL 4775450, *8 (D. Mass. Sept. 13, 2016) (explaining that where an action is not removed to federal court, the principles of removal jurisdiction are not applicable).

In summary, the overall assessment of the factors presents a mixed picture regarding abstention. While the identical factual circumstances in the state court proceeding and the reactive nature of this federal action support abstention, the criminal nature of the state action, which cannot resolve all the federal claims, the absence of any novel or complex state law questions, and the fact that the federal action was filed first weigh against abstention. Given that these considerations "heavily . . . favor . . . the exercise of jurisdiction," Moses, 460 U.S. at 16, a stay based on the Colorado River abstention doctrine is not warranted.

### D. *Younger Doctrine*

The Younger abstention doctrine, established in Younger v. Harris, 401 U.S. 37 (1971), is a principle of abstention that directs federal courts to refrain from interfering with ongoing state proceedings. As articulated in Moore v. Sims, federal courts should refrain from intervening in state judicial processes when there is an ongoing state proceeding, unless the federal plaintiff faces "great and immediate irreparable" harm. 442 U.S. 415, 423 (1979); see Grant v. Ross, No. CV 18-12601-RGS, 2018 WL 6682768, at *2 (D. Mass. Dec. 19, 2018) ("[T]o the extent that a proceeding before [state court] is on-going, the [c]ourt will abstain from exercising jurisdiction under Younger v. Harris . . . [as plaintiff's] request to interfere with pending state court proceedings implicates all the requirements for Younger abstention."). Similarly, Hines v. Hervey reiterates that federal courts "may not interfere with ongoing state criminal proceedings

11

absent an immediate and great threat of irreparable harm." Hines, No. CV 17-40042-DHH, 2018 WL 1477138, at *.  This doctrine is grounded in respect for state functions while recognizing that both state and federal courts share the responsibility and capability to protect rights granted by the Constitution of the United States.  Steffel v. Thompson, 415 U.S. 452, 460–61 (1974) (quoting Robb v. Connolly, 111 U.S. 624, 637 (1884)).

The question of whether "interference" exists is a threshold issue. Rio Grande, 397 F.3d at 70.  As stated in Rio Grande, "Younger applies only when the relief asked of the federal court 'interfere[s]' with the state proceedings." Id.  (quoting Quackenbush, 517 U.S. at 716).  Federal courts have long upheld a "fundamental policy against federal interference with state criminal proceedings." In Re Justices of Superior Court Dept. of Mass., 218 F.3d 11, 16 (1st Cir. 2000) (quoting Younger, 401 U.S. at 46).  For example, in Cross v. DOC Sheriff Off. of Suffolk Cnty. House of Correction, the court noted that "to the extent [plaintiff] seeks to proceed in this case with an action in federal court relating to his pending criminal case in [state court], this Court may ABSTAIN from exercising jurisdiction over any such claims under Younger . . . [and] even if the [c]ourt were not to abstain, it appears [plaintiff] seeks relief under 42 U.S.C. § 1983 from some parties who may be immune from such relief . . . . "). Cross, No. CV 19-11603-LTS, 2019 WL 5273247, at *1 (D. Mass. Oct. 17, 2019).

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. 42 U.S.C. § 1983.  To prevail, an individual asserting a Section 1983 claim must show that the challenged conduct is "attributable to a person acting under color of state law" and that the conduct was a "denial of rights secured by the Constitution or by federal law."  Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).  As explained in Graham v. Connor, Section 1983 is "not itself a source of substantive rights, but

12

merely provides a method for vindicating federal rights elsewhere conferred" (citation omitted). Graham, 490 U.S. 386, 393-94 (1989). Qualified immunity provides that "government officials performing discretionary functions" are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Williams, who is a state criminal defendant and a federal civil plaintiff, has filed a Motion for a New Trial in state court based on alleged newly discovered evidence of police misconduct. The state proceeding is directly related to the issues raised in his federal civil rights lawsuit. If this Court were to rule on the qualified immunity of the state troopers, it could potentially interfere with the state court's adjudication of that motion, particularly its determination of whether the officers followed proper procedures and/or whether Williams' constitutional rights were violated. This is precisely the type of interference the Younger doctrine seeks to avoid.

The First Circuit employs a three-step analysis to determine whether federal courts should abstain under the Younger doctrine. Sirva Relocation, LLC v. Richie, 794 F.3d 185, 192–93 (1st Cir. 2015). First, The pending state proceeding must fall into one of three categories: (a) criminal prosecutions, (b) civil proceedings that are similar to criminal prosecutions (quasi-criminal proceedings), or (c) civil proceedings involving a state's interest in enforcing its court orders and judgments. Sirva Relocation, 794 F.3d at 192 (citing Sprint Communs., Inc. v. Jacobs, 571 U.S. 69, 73 (2013)). Second, the case must satisfy three criteria, known as the Middlesex factors: (a) the state proceeding must be ongoing, (b) it must involve significant state interests, and (c) it must provide an adequate opportunity for the plaintiff to raise federal claims

in state court.  Brooks v. N.H. Supreme Court, 80 F.3d 633, 638 (1st Cir. 1996); see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).  Finally, the court will consider whether any exceptions to the Younger doctrine apply.  Abstention is inappropriate if the state proceeding is brought in bad faith to harass, if the state forum cannot adequately protect federal rights, or if the state statute is clearly unconstitutional.  Sirva, 794 F.3d at 192-93.  If all three prongs of the Younger analysis are met, federal courts must abstain from exercising jurisdiction, regardless of the plaintiff's assertion that important federal rights are at stake.  See In re Justices, 218 F.3d at 17 (collecting cases); Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 36 (1st Cir. 2004).  Abstention serves to enable federal and state courts to operate concurrently, balancing their interests with mutual respect.  Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 664 (1st Cir. 2010).  Federal courts generally assume that state courts are competent to address federal constitutional and statutory claims in accordance with the Supremacy Clause.  Casa Marie, Inc. v. Super. Ct., 988 F.2d 252, 262 (1st Cir. 1993) (footnote omitted).

In the present case, Younger abstention is appropriate.  First, there is no dispute that Williams is the criminal defendant in the underlying state criminal prosecution, Williams, 1713-CR-001861, thereby satisfying the first prong of the analysis.  See Anderson v. Supreme Jud. Ct. of Mass., No. 18-CV-11302-DJC, 2019 WL 1244054, at *3 (D. Mass. Mar. 15, 2019) ("[A] federal court should abstain from exercising subject matter jurisdiction given the pendency of a related state court proceeding.").  Having established that the state action qualifies as a criminal proceeding, it is necessary to evaluate whether it meets the Middlesex factors and whether any exceptions to the Younger doctrine apply.

All three Middlesex factors are satisfied.  First, the state action is ongoing.  Williams has

submitted a letter from CPCS indicating their review of his case to determine potential representation for post-conviction relief. Moreover, the challenged conviction and its underlying prosecution significantly implicate state interests, particularly in promoting public safety and maintaining authority over state criminal proceedings. See Jackson v. Worcester Police Dept., No. 10-40132-FDS, 2010 WL 4273821 at *2 (noting that Younger underscores the state's interest in criminal proceedings). Lastly, the state court proceedings provide Williams with an adequate opportunity to present his federal constitutional claims, as state forums are presumed competent. See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 437 (1982) (quoting Gibson v. Berryhill, 411 U.S. 564, 577 (1973)); Casa Marie, 988 F.2d at 262. Williams' federal constitutional challenges relate to his interactions with the defendants that led to his arrest, indictment, and conviction. Williams will have the opportunity to raise constitutional arguments during his pursuit of post-conviction relief in state court, and it is not appropriate for this Court to interfere with the state court's consideration of these claims. See Jackson, 2010 WL 4273821 at *2.

Finally, no exceptions to the Younger doctrine apply in this case. There is no indication, nor do the Defendants contend, that Williams is pursuing a new trial in bad faith. Additionally, no state law has been identified as constitutionally problematic, warranting abstention. Therefore, the Court concludes that the pending state proceeding satisfies all three prongs of the Younger analysis, necessitating abstention from exercising jurisdiction over the present action.

**CONCLUSION**

Given the ongoing state court proceedings that implicate Williams' criminal conviction and his constitutional rights, this Court abstains from exercising jurisdiction over this case at this time. For the reasons stated above, the Plaintiff's Motion to Stay [Dkt. 138] is **GRANTED**

based on <u>Younger</u> abstention.  The proceedings are **STAYED**, and the Plaintiff is directed to file a status report on the progress of the state court action on October 15, 2024, and every 90 days thereafter until the stay is lifted.

    **SO ORDERED.**

Dated: September 25, 2024                              <u>*/s/ Angel Kelley*</u>
                                                                                  Hon.  Angel Kelley
                                                                                  United States District Judge